## CHARLES A. SCOTT AND JAN F. SCOTT, PETITIONERS v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18916–82.     Filed April 15, 1985.

Charles A. Scott and Jan F. Scott, pro se.
*Robert M. Ratchford*, for the respondent.

SIMPSON, *Judge*: The Commissioner determined a deficiency of $7,923 in the petitioners' Federal income taxes for 1980. After concessions by both parties, the issues for decision are: (1) Whether a separate structure which contained an office and which was on the same property as the petitioner's house was "appurtenant to" such house within the meaning of section 280A(f)(1)(A), I.R.C. 1954[1] and therefore a part of their dwelling unit; and (2) how the gross income limitation of section 280(c)(5) is to be applied to the deductions attributable to the use of such office.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Charles A. and Jan F. Scott, husband and wife, maintained their residence in New Orleans, Louisiana, at the time they filed their petition in this case. They filed their joint Federal income tax return for 1980 with the Internal Revenue Service Center, Austin, Texas. Mr. Scott will sometimes be referred to as the petitioner.

---

[1]All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue.

During 1980, the petitioners resided at 3949 Elysian Fields Avenue, New Orleans, Louisiana (the property). The petitioners' property was 75 feet wide and approximately 160 feet in depth. On the property were located the petitioners' house, a separate garage with a lean-to, and another separate structure used by Mr. Scott as an office. A fence surrounded three sides of the rear of the property. The office building was located within such fenced area and 12 feet behind the house. There was a separate walkway leading to a gate in the fence and to the office building. The office building consists of four rooms and a bathroom, but contains no sleeping or kitchen facilities.

The property containing the petitioners' house and office building was subject to the same title and the same mortgage. During 1980, the public utilities, taxes, and insurance premiums were charged and paid as a unit for all the buildings on the property. Furthermore, during 1980, the petitioners' house and office building had the same street address. However, in 1983, Mr. Scott applied for and received a new address for the office building of 3947 Elysian Fields Avenue.

During 1980, Mr. Scott was employed as a full-time associate professor of chemistry by Southern University of New Orleans. He was provided an office at the school for his use in connection with his teaching responsibilities.

In 1980, Mr. Scott was also engaged in the trade or business of managing and owning rental properties (the rental business) and the trade or business of chemically analyzing water (the chemical business). The office building was used solely to carry on, on a regular basis, such trades or businesses, and such office building constituted the principal place of business for such trades or businesses.

During 1980, Mr. Scott's total gross income from his chemical business was $385 and from his rental business was $23,123.51. Such gross income consisted of $385 received for services in the chemical business, $6,375 as gross rental income, $11,041.68 as capital gains on the sales of properties (before the allowance of deductions under section 1202), $138.81 as ordinary income from the sales of such properties, and $5,577.02 as interest on mortgages which Mr. Scott acquired in such sales.

Mr. Scott's total expenses arising out of both his chemical and rental businesses which were not allocable to the use of

his office building amounted to $31,986.53. Such expenses included: $725.77 as costs of office supplies, postage, dues, publications, depreciation on laboratory equipment and library, and repairs in connection with his chemical business; $29,825.16 as mortgage interest, repairs, utilities, taxes, advertising, depreciation of rental properties, and legal fees incurred in connection with his rental business; and $1,435.60 as telephone, tools, mileage, depreciation on equipment, and miscellaneous expenses common to all such rental properties.

On their 1980 Federal income tax return, the petitioners claimed total deductions of $1,965.62 for expenses allocable to the use of their office building.[2] The petitioners calculated such deductions in the following manner: (1) For purposes of deducting expenses, the petitioners allocated 25 percent of the expenses incurred for the property during the year; (2) for purposes of depreciating the office building, the petitioners allocated 25 percent of their cost basis in the property to the office building; and (3) for purposes of depreciating those items which were attributable solely to the office building, the petitioners allocated 100 percent of their cost basis in such items. The amounts claimed on the return were:

| | |
|---|---|
| Taxes | $100.25 |
| Utilities | 484.94 |
| Insurance | 101.28 |
| Depreciation | |
|   Office building | 837.23 |
| Furniture and fixtures acquired | |
|   prior to 1979 | 20.00 |
| Furniture and fixtures acquired | |
|   in July 1979 | 88.70 |
| New roof on office building | 282.28 |
| Iron doors and windows on | |
|   office building | 50.94 |

In his notice of deficiency, the Commissioner disallowed all of the petitioner's deductions relating to both the chemical and rental businesses on the grounds that the petitioners had not established that any amount constituted an ordinary and

---

[2]The petitioners did not allocate to the office building any portion of the mortgage interest paid on the property for 1980. However, the petitioners did claim $8,121.50 of mortgage interest paid on the property as an itemized deduction on Schedule A of Form 1040 of their 1980 Federal income tax return.

necessary business expense or was expended for the purpose designated. The Commissioner now concedes in full the deductions for the chemical and rental businesses other than those allocable to the use of the home office. He also concedes that the item of taxes is deductible under section 164(a)(1) regardless of whether there was a qualifying business use of the dwelling unit. See sec. 280A(b). The parties have agreed that if any deductions are allowable for the use of the office building, the allocation method used by the petitioners on their 1980 return is appropriate.

OPINION

The first issue for decision is whether the separate structure which contained an office and which was on the same property as the petitioner's house was "appurtenant to" such house within the meaning of section 280A(f)(1)(A) and therefore is to be treated as part of the dwelling unit.[3] In relevant part, section 280A provides:

(a) GENERAL RULE.—Except as otherwise provided in this section, in the case of a taxpayer who is an individual * * *, no deduction otherwise allowable under this chapter shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence.

*　　*　　*　　*　　*　　*　　*

(c) EXCEPTIONS FOR CERTAIN BUSINESS OR RENTAL USE; LIMITATION ON DEDUCTIONS FOR SUCH USE.—
(1) CERTAIN BUSINESS USE.—Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis —

*　　*　　*　　*　　*　　*　　*

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

*　　*　　*　　*　　*　　*　　*

(f) DEFINITIONS AND SPECIAL RULES.—

---

[3]There was a dispute as to which party bears the burden of proof in this case because of the way the issue developed. However, upon careful consideration, we have decided that we need not rule on such dispute since the record in this case fully supports our conclusions as to the other issues for decision regardless of which party bears the burden of proof.

(1) DWELLING UNIT DEFINED.—For purposes of this section—
(A) IN GENERAL.—The term "dwelling unit" includes a house, apartment, condominium, mobile home, boat, or similar property, and *all structures or other property appurtenant to such dwelling unit.* [Emphasis added.]

The petitioners argue that section 280A is inapplicable to the deductions at issue because the office building did not constitute part of a "dwelling unit" within the meaning of such section. They contend that the office building is not appurtenant to their house and that it constitutes a wholly independent office building not associated with their residence. We cannot agree.

The statute does not supply a definition of the term "appurtenant," but we must assume that Congress intended for the term to have its ordinary meaning. Black's Law Dictionary (5th ed. 1979) defines "appurtenant" as "Belonging to; accessory or incident to." Thus, one thing is appurtenant to another thing if it is directly related to the latter although not an essential part of it or not attached to it.

Moreover, section 280A(c)(1) provides certain exceptions to the general rule disallowing deductions for the expenses allocable to a home office, and one of those exceptions is for an office in a separate structure if certain other conditions are satisfied. Sec. 280A(c)(1)(C). Consequently, Congress contemplated that section 280A does apply when the home office is in a separate structure, not attached to the residence. Such application was expressly stated in the committee report, which provides:

the committee amendment provides that a deduction will not be disallowed in the case of a taxpayer who, in connection with his trade or business, uses a separate structure which is not attached to his dwelling unit (e.g., an artist's studio in a structure adjacent to but unattached to his residence). * * * [S. Rept. 94–938 (1976), 1976–3 C.B. (Vol. 3) 49, 186.]

Thus, it is clear that the petitioners' office building may be appurtenant to their house although it is not attached to the house.

In this case, the petitioners' office building is on the same residential lot as the house; the office building is only 12 feet from the house; the office building is behind the house and in an area enclosed by a fence; and all of the expenses for the

property, taxes, utilities, interest, and insurance, were included in common bills. Under these circumstances, we are convinced that there was a close relationship between the office building and the house so that it should be treated as appurtenant to the house and as a part of a dwelling unit subject to the rules of section 280A. The fact that the petitioner subsequently obtained a different address for the office building does not alter this conclusion.

In the alternative, the petitioners argue that if section 280A is applicable to the deductions claimed by them, their office building constitutes a separate structure within the meaning of section 280A(c)(1)(C) and that thus they are not subject to the general disallowance of their deductions under section 280A(a). The Commissioner concedes that the petitioners do qualify under section 280A(c)(1)(C), but he contends that under section 280A(c)(5), they are not entitled to deduct the expenses allocable to their home office. Consequently, the second issue for decision is how the gross income limitation of section 280A(c)(5) is to be applied to the deductions allocable to the use of the office building.[4]

Section 280A(c)(5) provides in pertinent part:

(5) LIMITATION ON DEDUCTIONS.—In the case of a use described in paragraph (1) * * * the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of—

(A) the gross income derived from such use for the taxable year, over

(B) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used.

The resolution of this issue turns on the meaning of the phrase "gross income derived from such use."

The Commissioner urges us to adopt the interpretation contained in section 1.280A–2(i)(2)(ii) of his proposed regulations (45 Fed. Reg. 52404 (Aug. 7, 1980)[5]), which provides:

---

[4]No contention has been made regarding the "exclusively used" requirement of sec. 280A(c)(1). Accordingly, we need not explore this question, and we express no opinion as to the application of the "exclusively used" test to a multiple-use situation.

[5]In 1983, the Commissioner revised his proposed regulations under sec. 280A. 48 Fed. Reg. 33325 (July 21, 1983). The revised proposed regulations rearrange the provisions here at issue but make no significant changes in them. The provision in question is now sec. 1.280A–2(i)(2)(iii) of the proposed regulations.

For purposes of section 280A and this section, gross income derived from use of a unit means gross income from the business activity in the unit reduced by expenditures required for the activity but not allocable to the use of the unit itself, such as expenditures for supplies and compensation paid to other persons. For example, a physician who uses a portion of a dwelling for treating patients shall compute gross income derived from use of the unit by subtracting from the gross income attributable to the business activity in the unit any expenditures for nursing and secretarial services, supplies, etc.

If such interpretation is applied to the facts of this case, the petitioners would not have any gross income derived from the use of their home office during 1980 since the expenses otherwise attributable to the rental and chemical businesses, $31,986.53, exceed the gross income derived from such businesses, $23,517.51. Consequently, if such interpretation is applied to these facts, the petitioners would not be entitled to deduct any of the expenses allocable to the business use of their home office.

Under section 7805(a) and section 301.7805–1(a), Proced. & Admin. Regs., the Commissioner has broad authority to promulgate all needful rules and regulations. *United States v. Correll*, 389 U.S. 299, 306–307 (1967). The Supreme Court has repeatedly declared that Treasury regulations should not be struck down lightly. See, e.g., *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169 (1981); *Bingler v. Johnson*, 394 U.S. 741, 749–750 (1969); *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). The judicial role in assessing the validity of a regulation is necessarily a limited one. In viewing the validity of a Treasury regulation, this Court ordinarily gives deference to the Commissioner's interpretation, and our inquiry is generally limited to the question of whether the regulation implements the congressional mandate in some reasonable manner. *National Muffler Dealers Association, Inc. v. United States*, 440 U.S. 472, 476 (1979); *United States v. Correll, supra* at 307.

On the other hand, judicial deference is not a substitute for judicial scrutiny and analysis. *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24 (1982); *United States v. Cartwright*, 411 U.S. 546, 550 (1973). A regulation which contradicts the unambiguous language of the statute it purports to interpret cannot stand. *Citizen's National Bank of Waco v. United States*, 417 F.2d 675 (5th Cir. 1969); *CWT Farms, Inc. v. Commissioner*, 79 T.C. 1054, 1062 (1982), affd. 755 F.2d 790

(11th Cir. 1985); *Gresham v. Commissioner*, 79 T.C. 322, 331 (1982), affd. 752 F.2d 518 (10th Cir. 1985). Moreover, where the statute is unambiguous, and there is no valid reason for adding a requirement to those the statute already provides, the Commissioner may not usurp congressional authority by adding such a requirement by regulation. *CWT Farms, Inc. v. Commissioner*, *supra* at 1062, and the cases cited therein. Furthermore, a regulation will be held to be invalid if it is inconsistent with the statute's legislative history and purpose. *United States v. Vogel Fertilizer Co.*, *supra.*

In this case, we are dealing merely with a proposed regulation. As such, it does not reflect the views of the Commissioner following a reconsideration of his proposed rules as a result of an administrative hearing and comments that may have been submitted by interested persons. See 5 U.S.C. sec. 553(c) (1982). In any event, it is clear that the proposed regulation here at issue is not entitled to the judicial deference due final regulations (*Miller v. Commissioner*, 70 T.C. 448, 460 (1978); *F.W. Woolworth Co. v. Commissioner*, 54 T.C. 1233, 1265–1266 (1970)), and in our view, the proposed regulation is inconsistent with the statute. Moreover, the inconsistency is so clear that even if the regulation had been adopted, we would be constrained to hold it invalid.

"Gross income" is a term of art defined in section 61(a) as:

all income from whatever source derived, including * * * the following items:
   (1) Compensation for services * * *
   (2) Gross income derived from business;
   (3) Gains derived from dealings in property;
   (4) Interest;
   (5) Rents;

Under the statutory scheme, all receipts of income generally constitute gross income.[5] Section 62 introduces the term "adjusted gross income" and provides that it is to be computed by subtracting from gross income certain specified deductions, including deductions for general business expenses, for certain employee business expenses, for losses resulting from the sale

---

[5] An exception to this general rule is provided for those taxpayers engaged in the business of manufacturing, merchandising, or mining. In the case of such a business, gross income is computed by taking the gross receipts from sales and subtracting the cost of goods sold. Sec. 1.61–3, Income Tax Regs.

of property, for rental expenses, and for long-term capital gains. Section 63 adds the term "taxable income" and allows deductions for certain other items in the computation of taxable income. Under this arrangement, it is well established that gross income refers to the receipts of a business before the subtraction of the expenses of the business. See *Thompson v. Commissioner*, T. C. Memo. 1984–32; *Umstead v. Commissioner*, T. C. Memo. 1982–573; see also *Stroman v. Commissioner*, 77 T.C. 514, 523 (1981), affd. per curiam 692 F.2d 1 (5th Cir. 1982).

A limitation similar to that contained in section 280A(c)(5) is set forth in section 183, which restricts the deductions allowable with respect to an activity not engaged in for profit. Section 183(b)(1) provides that such deductions are allowable if they would be allowable irrespective of whether the activity is engaged in for profit, and section 183(b)(2) provides that the other deductions attributable to the activity are allowable "but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1)." It is clear that the purpose of such provision is to allow some of the deductions attributable to the activity and that, in applying such limitation, the gross receipts from the activity are to be considered as the limitation on the deductions. See sec. 1.183–1(b)(3), Income Tax Regs. If the business expenses were first subtracted from the income from the business, the purpose of the provision would be defeated. S. Rept. 91–552 (1969), 1969–3 C.B. (Vol. 3) 423, 490.

The Commissioner argues that the statute is ambiguous in that it does not provide a definition of "gross income derived from such use," and he refers to the legislative history to support his interpretation. However, the committee report states in pertinent part:

In the case where gross income is *derived* both from the business use of the residence or separate unattached structure and from the business use of facilities other than the residence or separate unattached structure a reasonable allocation (based on the facts and circumstances of each case) is to be made to determine that portion of the gross income *derived* from the business use of the residence or separate unattached structure. * * * [S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 187; emphasis added.]

In our view, the committee report makes clear that the phrase "gross income derived from such use" was merely intended to refer to the source of the income and to distinguish the income derived from the business use of a home office from income derived from other sources. For purposes of applying such limitation, income derived from other business activities is to be disregarded.

The effect of the Commissioner's interpretation of section 280A(c)(5) is to provide that the deductions allocable to the business use of a residence are not allowable unless the gross income from the business exceeds all other deductions allocable to such business. The committee report describes the limitation as follows:

The allowable deductions attributable to the use of a residence or separate unattached structure for trade or business purposes may not exceed the amount of the gross income derived from the use of the residence or separate unattached structure for that trade or business reduced by the deductions which are allowed without regard to their connection with the taxpayer's trade or business (e.g., interest and taxes). * * * With respect to the deductions which are allocable to the trade or business use of the residence or separate unattached structure, deductions allowable without regard to whether the activity is a trade or business are to be deducted first. Any remaining gross income may then be reduced (but not below zero) by the remaining allowable deductions which are allocable to such use. [S. Rept. 94–938, *supra*, 1976–3 C.B. (Vol. 3) at 187.]

The Commissioner's interpretation is, thus, inconsistent with the well-established meaning of the term "gross income," and there is nothing in the legislative history to support his position. The statute and legislative history declare merely that the deductions allocable to the business use of a residence cannot exceed the gross income derived from such use. Under such circumstances, we reject the Commissioner's interpretation, and we hold that the petitioners are entitled to deduct the expenses allocable to the business use of their office building since such expenses do not exceed the gross income derived from such businesses reduced by the deductions allowable without regard to such business use.

Because of other adjustments,

*Decision will be entered under Rule 155.*