RUSSELL R. MEARKLE AND VIRGINIA R. MEARKLE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 28428-84.          Filed June 27, 1988.

*Robert A. Clemente,* for the petitioners.
*Robert Fernandez,* for the respondent.

SUPPLEMENTAL OPINION

PARR, *Judge:* This case is now before us on remand from

the Court of Appeals for the Sixth Circuit.[1] In our earlier opinion (87 T.C. 527 (1986)), we held that petitioners were not entitled to litigation costs under section 7430.[2] Although petitioners had substantially prevailed as to the issue and the amount in controversy, and had exhausted their administrative remedies, we held that the position of the United States was not unreasonable, and therefore petitioners were not "prevailing parties" to whom litigation costs could be awarded under section 7430.[3]

By notice of deficiency dated May 21, 1984, respondent determined a deficiency in petitioners' 1981 Federal income tax in the amount of $149. He disallowed petitioners' deduction for a home office. Petitioners operated an Amway business out of their residence. Respondent's determination was based upon one of his proposed regulations. Petitioners

---

[1] *Mearkle v. Commissioner*, 838 F.2d 880 (6th Cir. 1988).

[2] All section references are to the Internal Revenue Code as amended and in effect during the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[3] SEC. 7430. AWARDING OF COURT COSTS AND CERTAIN FEES.

(a) IN GENERAL.—In the case of any civil proceeding which is—

(1) brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, and

(2) brought in a court of the United States (including the Tax Court and the United States Claims Court),

the prevailing party may be awarded a judgment for reasonable litigation costs incurred in such proceeding.

(b) LIMITATIONS.—

(1) MAXIMUM DOLLAR AMOUNT—The amount of reasonable litigation costs which may be awarded under subsection (a) with respect to any prevailing party in any civil proceeding shall not exceed $25,000.

＊　　＊　　＊　　＊　　＊　　＊　　＊

(c) DEFINITIONS.—For purposes of this section—

(1) REASONABLE LITIGATION COSTS.—

(A) IN GENERAL.—The term "reasonable litigation costs" includes—

(i) reasonable court costs,

(ii) the reasonable expenses of expert witnesses in connection with the civil proceeding,

(iii) the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case, and

(iv) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding.

＊　　＊　　＊　　＊　　＊　　＊　　＊

(2) PREVAILING PARTY.—

(A) IN GENERAL.—The term "prevailing party" means any party to any proceeding described in subsection (a) (other than the United States or any creditor of the taxpayer involved) which—

(i) establishes that the position of the United States in the civil proceeding was unreasonable, and

(ii)(I) has substantially prevailed with respect to the amount in controversy, or

(II) has substantially prevailed with respect to the most significant issue or set of issues presented.

filed a petition for redetermination by this Court on August 9, 1984.

On April 15, 1985, while petitioners' case was pending, we issued our opinion in *Scott v. Commissioner*, 84 T.C. 683 (1985). In that case, we held that section 1.280A-2(i)(2)(ii), Proposed Income Tax Regs., 45 Fed. Reg. 52404 (Aug. 7, 1980),[4] was inconsistent with the statute. The regulation had provided that gross income from a business conducted out of a home office was defined as gross income from the business reduced by certain expenditures. Since deductions for home office use are limited to gross income, this effectively restricted such deductions. Respondent's determination in this case had been pursuant to the same proposed regulation.

Shortly after the appeal period in *Scott* expired, on October 16, 1985, respondent offered to concede this case and forwarded a proposed decision document to petitioners. Petitioners answered by letter dated February 4, 1986, proposing an alternative decision document containing an acknowledgment by respondent that he was conceding because he did not desire to relitigate the *Scott* issue. Respondent found this decision document unacceptable. The case was called for trial on February 10, 1986. Respondent moved to dismiss the case and enter a decision in favor of petitioners. Petitioners objected. We granted respondent's motion, and, on February 19, 1986, entered a decision in favor of petitioners. We later vacated that decision in order to consider petitioners' motion for litigation costs.

In our earlier opinion, we denied petitioners' motion because we held that it was reasonable for respondent to have relied on his proposed regulation until such time as it was determined by the Court to be inconsistent with the statute. We also held that respondent was reasonable in conceding the case shortly after the appeal period expired for the case in which we made that determination. Since respondent's position was not unreasonable, petitioners were not entitled to litigation costs.

On appeal, the Sixth Circuit Court of Appeals held that under the circumstances of this case, respondent's reliance upon the proposed regulation was not reasonable. The Court

---

[4]Now sec. 1.280A-2(i)(2)(iii), Proposed Income Tax Regs., 48 Fed. Reg. 33325 (July 21, 1983).

of Appeals stated that in this case, respondent knew or should have known that the proposed regulation was invalid. The court held that petitioners were entitled to reasonable litigation costs, and remanded the case to us for further proceedings. The court expressed concern, however, over two aspects of this case, as follows:

We are concerned, however, with the taxpayers' attempt to support a request for the maximum award of $25,000, as the reasonable cost of litigating a $149 claim. It appears that in the initial request, New York counsel sought over $11,000 in attorney fees for preparation of a routine five-page petition for redetermination of the claimed deficiency, and over $15,000 for the preparation of a research memorandum. We regard as disturbing the suggestion, found in the record, that the fees requested of the tax court may not relate solely to the representation of these clients, since such a suggestion raises serious implications under the Code of Professional Responsibility. In addition, litigation costs will not be awardable for the period following the Commissioner's offer to concede the case, if the court concludes that the taxpayers unreasonably protracted the proceedings. [Mearkle v. Commissioner, 838 F.2d 880, 883 (6th Cir. 1988).]

In light of the above admonitions, we must now determine the appropriate amount of litigation costs to award petitioners.

Petitioners were represented by several different attorneys in this case. J. William Dantzler, Jr., along with J. Roger Mentz, and Marc A. Dlugoff, of the same law firm, represented petitioners at the time of filing the petition. Mr. Dantzler appeared on behalf of petitioners at calendar call on February 10, 1986, and filed the motion for litigation costs on March 21, 1986. The Court granted Mr. Dantzler's motion to withdraw on May 12, 1986.[5] On April 7, 1986, Robert A. Clemente and Robert B. Bettendorf entered their appearances in this case. Mr. Bettendorf filed a motion to withdraw as counsel on August 15, 1986, which was granted on August 20, 1986. On August 19, 1986, Mr. Clemente filed the reply to respondent's notice of objection to the motion. See Rule 232(c) and (d).

Both Mr. Dantzler and Mr. Clemente filed affidavits in support of petitioners' claimed litigation costs. In an

---

[5] No motion to withdraw as counsel was filed by Mr. Mentz or Mr. Dlugoff at that time. On Aug. 8, 1986, the Court ordered them withdrawn as petitioners' counsel in order to assure service on petitioners' new counsel.

affidavit dated March 21, 1986, Mr. Dantzler declared that the following litigation costs had been incurred in connection with this case:

| | |
|---|---|
| 1. Preparation of legal memorandum regarding office-in-the-home deduction .............. | $15,267.50 |
| 2. Preparation of the petition ................. | 11,314.50 |
| 3. Preparation for trial ...................... | 2,399.00 |
| | 28,981.00 |

Mr. Clemente's affidavit, dated August 11, 1986, included printouts of Mr. Dantzler's firm's bill ledger which showed fees for this case totaling $29,142 for the period July 21, 1984, through December 14, 1985. In addition, fees for Mr. Clemente's services were as follows:

| | |
|---|---|
| Pre-petition litigation costs (April 1984 — August 1984)...................... | $1,100.00 |
| Post-petition litigation costs (April 1986 — August 1986)...................... | 4,656.25 |
| | 5,756.25 |

The amount of reasonable litigation costs which may be awarded a prevailing party under section 7430 cannot exceed $25,000. Sec. 7430(b)(1).

Section 7430 was amended in 1986 and now includes new provisions not applicable herein. We find it helpful, however, to consider two of these new provisions as guidelines in determining what litigation costs were "reasonable" in this case. Section 7430(b)(4), added by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752, sec. 1551(b), reads as follows:

(4) COSTS DENIED WHERE PARTY PREVAILING PROTRACTS PROCEEDINGS.—No award for reasonable litigation costs may be made under subsection (a) with respect to any portion of the civil proceeding during which the prevailing party has unreasonably protracted such proceeding.

Section 7430(c)(1)(A) was also amended by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2752, sec. 1551(c), and now reads as follows:

(A) IN GENERAL.—The term "reasonable litigation costs" includes—
(i) reasonable court costs, and
(ii) based upon prevailing market rates for the kind or quality of services furnished—

\*       \*       \*       \*       \*       \*       \*

(III) reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding, except that such fees shall not be in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for such proceeding, justifies a higher rate.

The Court of Appeals noted that petitioners may have unreasonably protracted these proceedings by not accepting respondent's offer to concede the case. At calendar call, Mr. Dantzler made it clear that he had refused to sign respondent's settlement documents, and now opposed respondent's motion to dismiss the case, because of hundreds of other Amway distributors being audited on the same issue. Petitioners were thus not satisfied with a favorable resolution of their own case, but sought a concession or admission by respondent as to the merits of the issue for the benefit of these other taxpayers.

We believe that petitioners unreasonably protracted this proceeding by not signing a decision document or a stipulation of settled issues in October 1985, when one was first offered by respondent. Respondent offered to fully concede the case at that time. Respondent is not required to make any admissions in a settlement document. Any legal fees incurred between that time and February 19, 1986, when we dismissed the case, should not have been incurred and therefore are not reasonable.

Likewise, the large award sought by petitioners in this case (the $25,000 maximum) caused concern to the Court of Appeals. According to counsel's affidavits, petitioners incurred approximately $35,000 in legal fees in contesting a $149 deficiency. This appears to be excessive and unreasonable. Again, it is clear that the attorneys' services were not solely for these petitioners, but for Amway and its distributors all across the country. This is apparent from a look at Mr. Dantzler's firm's bill ledger, which itemizes each service performed for the client. We do not find it appropriate to fully reimburse litigation costs in one case which were incurred for the purpose of other cases as well, some of which may have already been in litigation.[6] See *Mahoney v.*

---

[6]We note that this case is not a "test case" which the parties and the Court agree to litigate in order to resolve an issue affecting many other taxpayers who agree to be bound by the result therein. See, e.g., *Martin v. Commissioner,* 90 T.C. 1078 (1988).

*United States,* an unreported case (N.D. Cal. 1986, 59 AFTR2d 87-407, 87-1 USTC par. 9161). Thus, although we believe that some of the attorney's fees are attributable to this case, we cannot determine the appropriate amount from the affidavits or the bill ledger submitted. We will therefore make our own determination as to reasonable attorney's fees.

Mr. Dantzler claimed that his firm charged $11,314.50 for preparation of the petition. We find this amount to be grossly inflated. The petition was four and a half pages long and contained some facts about petitioners' Amway distributorship and a cursory analysis of the law. We estimate that it took 3 hours to prepare. Although Mr. Dantzler's firm charges $85 to $185 per hour, we find it more reasonable to use the $75 hourly rate suggested in section 7430, as amended. We will therefore allow $225 for the preparation of the petition.

Mr. Dantzler also claimed $15,267.50 for the preparation of a legal memorandum. This memorandum is not part of the record and we do not know its content or its length. We realize that between the August 1984 filing of the petition and the October 1985 concession by respondent, Mr. Dantzler and his firm had reason to believe that the case would proceed to trial and, to that end, researched the issue of the deductibility of home office expenses. Such research, however, and the legal memorandum subsequently prepared, was not merely for these petitioners but benefited all Amway distributors. We estimate that 10 hours of an attorney's time is attributable to researching and writing a memorandum of law in this case, for a total of $750.

Mr. Dantzler also included $2,399 for trial preparation. By October 1985, it was clear there would be no trial in this case. However, as we have stated, prior to that time petitioners and their attorneys reasonably believed there would be a trial, and thus we will award an amount for trial preparation. Neither side engaged in any formal discovery. We estimate that 10 hours was spent on trial preparation, for a total of $750.

Mr. Dantzler's affidavit did not itemize his fees for the preparation of petitioner's motion for litigation costs. Such fees are itemized in his firm's bill ledger, however, and thus

they may have been included in Mr. Dantzler's summary under another category. In any event, we estimate that it took 5 hours to prepare this five-page motion, and we award $375 in fees.

As for Mr. Clemente's fees, we do not award petitioners any amount for pre-petition services, as these were not litigation costs. Mr. Clemente claimed to have spent 37.25 hours at $125 per hour, for a total of $4,656.25, on post-petition matters for this case. He reviewed respondent's objection to petitioners' motion for litigation fees, and prepared petitioners' reply. The reply was more substantial than Mr. Dantzler's submission, consisting of nine pages plus a four-page affidavit and several exhibits. We estimate Mr. Clemente spent 10 hours on petitioners' case, and award $750.

In addition, although petitioners have not requested such, we award $60 for filing the petition in this Court.

To reflect the foregoing,

> *An appropriate order and decision will be entered.*