T.C. Summary Opinion 2003-29


UNITED STATES TAX COURT


IRWIN AND JEANNINE RADNITZ, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 2162-01S.               Filed March 26, 2003.


Irwin and Jeannine Radnitz, pro se.

<u>Jonathan H. Sloat</u>, for respondent.


COUVILLION, <u>Special Trial Judge</u>:  This case was heard pursuant to section 7463 of the Internal Revenue Code in effect at the time the petition was filed.[1]  The decision to be entered

_____

    [1]    Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the years at issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

is not reviewable by any other court, and this opinion should not be cited as authority.

Respondent determined deficiencies in petitioners' Federal income taxes of $799 and $1,536, respectively, for 1997 and 1998. After concessions by respondent, the issues for decision are: (1) Whether, under section 280A(c), petitioners are entitled to deductions for office expenses for the years at issue in connection with the use of their home and two rental apartments in their respective trade or business activities in excess of amounts allowed by respondent, and (2) whether section 280A(c)(5) is unconstitutional as applied to petitioners.[2]

Some of the facts were stipulated. Those facts, with the annexed exhibits, are so found and are made part hereof. Petitioners' legal residence at the time the petition was filed was San Luis Obispo, California.

Petitioners were married during the years at issue. From January through August 1997, they resided at a Vista Loma address in Rancho Mirage, California. In August 1997, petitioners moved from the Vista Loma address to a Deepak Street address in Palm Springs, California. Petitioners resided at the Deepak address

---

[2] At trial, respondent conceded the deductibility of a $376 tuxedo rental expense and a $625 furniture expense for 1997. Petitioners conceded a foreign royalties issue for 1997. Another adjustment involving taxable Social Security benefits is a computational adjustment.

throughout all of 1998.  Petitioners were lessees of both properties.

Mr. Radnitz has been engaged as a full-time freelance writer since 1952 under the pseudonym Brad Radnitz.  Mrs. Radnitz is an actress.  Mr. Radnitz primarily wrote screenplays for the film and television industry and occasionally wrote novels.  He described the nature of his work as a writer as follows:

> My work is speculative.  It consists of researching and developing story ideas, film treatments, TV series concepts, scripts, and/or novels with the intent of selling them to prospective employers, namely, the movie studios, the networks, independent producers, and publishers.

By his estimate, Mr. Radnitz has written material for several films and movies of the week and over 350 television shows, including "The Lucy Show", "Gilligan's Island", "My Three Sons", "The Brady Bunch", "Ironside", and "Columbo".  He is a former president of the Writer's Guild of America (Writer's Guild) and has had professional involvement with that organization.

In the earlier part of his writing career, Mr. Radnitz wrote and sold story ideas or screenplay treatments in the episodic television field.  These ideas were merely outlines for the ultimate script.  In his later career, he wrote more materials to completion, then had an agent shop for a buyer.  His works, therefore, were not necessarily sold in the year of completion,

and, accordingly, the compensation for his work product often occurred months or years after the completion of a script. Due to the speculative nature of his writing activity, every script, proposed idea, and treatment created remained a potential income source depending on the interest of a buyer. Therefore, Mr. Radnitz retained all of his works and rented storage space for such purpose. He claimed no deduction for this rental expense, which was $120 per month.

The types of income Mr. Radnitz received from his writing activity depended on the type of work sold and contract terms that were negotiated. For a new story idea requiring additional writing, Mr. Radnitz was paid in stages as each draft or script was completed. In the case of more speculative projects, he received payment only when a buyer was found for a finished work. Mr. Radnitz also received royalty and residual payments, referred to as income from residuals, for reruns of shows he had written in the past. During the years at issue, he also received income from a pension fund established by the Writer's Guild.

Mr. Radnitz reported taxable pension income of $34,550 and $41,329, respectively, in 1997 and 1998, none of which is at issue in this case. He received wage income from residuals of $980 in 1997 and $1,503 in 1998. He did not receive income from current writings during 1997 and 1998, as he was drafting speculative screenplays during those years. Mrs. Radnitz

received wage income of $800 in 1997 and $3 in 1998. The relationship of Mr. Radnitz with the film and television industry for whom his writings were created and sold was that of an employee and was not an independent contractor relationship. Respondent does not challenge that characterization. Accordingly, the moneys Mr. Radnitz received for his work products were reflected on Forms W-2, Wage and Tax Statement.

Screenwriters are generally not provided office space in which to do their writing. They are expected to provide their own offices. As a result, during the years at issue, Mr. Radnitz provided himself with office space for his compositions. The type and location of the spaces depended on various factors, including cost, convenience, the length of the writing project, and the need for privacy and quiet. For the majority of the time, Mr. Radnitz used his residence as an office. However, for two 3-month periods during 1998, he used rented spaces that were outside of his main residence.

During 1997, Mr. Radnitz spent most of his time writing a screenplay entitled "Home Again". His office was exclusively at his residence at the Vista Loma address for the first part of the year and at the Deepak address in the latter part. In 1998, Mr. Radnitz used the office at the Deepak residence in January and February, again from June through August, and in December. From March through May 1998, he used a rented apartment on North

Indian Avenue in Palm Springs, California, as his office. From September through November 1998, he used another rented apartment on Ravenspur in Rancho Palos Verdes, California, as his office. Both rented apartments are referred to hereafter as the North Indian Avenue and Ravenspur apartments.

When Mr. Radnitz worked out of an office in his residence, as he has done for 40 years, he set aside one room for the exclusive use of his work. In 1997 and 1998, that room occupied 20 percent of the total space of his residence. The room contained novels, dictionaries, encyclopedias, research books, computer equipment, a typewriter, a desk, one or two chairs, lamps, a corkboard, a television set, and a video cassette recorder (VCR). No one in Mr. Radnitz's family was allowed to use the room, and it was locked when visitors came. There was no bed in the room, and no one slept there. Mr. Radnitz used the television and VCR in the research aspect of his work to record or watch broadcasts that were related to his writing projects. The subject equipment was not used for personal or family enjoyment. Mr. Radnitz generally worked alone and occasionally met with collaborators to work on projects.

Mr. Radnitz rented both the North Indian Avenue and the Ravenspur apartments in March 1998 because, as he stated: "we had a house full of relatives and suddenly having that office [within his residence] wasn't going to work, even though I locked

the door."  He used the North Indian Avenue apartment to work on a script called "In for the Kill" from March through May 1998. He used the Ravenspur apartment from September through November 1998 to finish and rewrite that script.  Prior to Mr. Radnitz's use of the Ravenspur apartment, Mrs. Radnitz used it from March through August 1998.  Mr. Radnitz explained that the earlier "use of that site was by my wife who is pursuing her career as an actress, and it was used as her office."  No further evidence of Mrs. Radnitz's use was provided at trial; however, petitioners claimed no deductions for Mrs. Radnitz's use of the Ravenspur space during this time period.

During 1997, when Mr. Radnitz used his two residences (Vista Loma and Deepak) as offices for his writing activity, petitioners determined that 20 percent of the floor space of each home was devoted to the home office.  Respondent has not challenged this determination.  Based on expenses for both homes totaling $30,002 for 1997, petitioners deducted 20 percent of that amount less an additional 10 percent of the resulting figure "for possible overage".[3]  Thus, on the 1997 return, petitioners claimed a deduction for an office in the home of $5,400.  In the notice of deficiency, respondent allowed petitioners a $980 home office

---

[3]    The total annual home expenses of $30,002 for 1997 consisted of rent, $22,400; gas, $2,268; electricity, $3,852; water, $876; television cable, $540; and disposal, $66.

expense deduction.  At trial, respondent took the position that the $980 had been erroneously allowed; however, respondent did not move to disallow that amount or to increase the deficiency in taxes attributable to the $980.  The record is not clear as to the basis upon which the $980 was allowed, nor as to the basis for respondent's claim at trial that the allowed $980 was in error.

For the year 1998, petitioners again determined that 20 percent of their Deepak residence constituted the home office for the writing activity of Mr. Radnitz.  However, since petitioners agree that their residence was used only for 6 months, on their 1998 return, they only deducted expenses for one-half of that year for Mr. Radnitz's writing activity.  For this 6-month period, petitioners deducted $3,740 as a home office expense on their 1998 return.  In the notice of deficiency, respondent allowed $1,503.  As with regard to the 1997 year, respondent claimed at trial that the amount allowed for 1998 was erroneous but did not move at trial to disallow that amount or to increase the deficiency.

Also for 1998, petitioners deducted expenses for the two rented apartments (the North Indian Avenue and the Ravenspur apartments), which were used by Mrs. Radnitz and Mr. Radnitz. The North Indian Avenue apartment was used by Mr. Radnitz for 3 months during 1998 and the total expenses incurred for that time

period, $2,495, were claimed as an unreimbursed employee business expense deduction on petitioners' 1998 return. With respect to the Ravenspur apartment, petitioners claimed an unreimbursed employee expense deduction of $4,138 for the 3 months Mr. Radnitz used the apartment during 1998. As noted earlier, Mrs. Radnitz also used the Ravenspur apartment during 1998 for 6 months in connection with her activity as an actress; however, petitioners did not claim any expense deduction on their 1998 tax return for that period.

In summary, petitioners deducted the following home office and employee business expenses related to the three described dwellings on their 1998 return:

| | |
|---|---|
| Home office expense for Deepak residence (6 months) | $ 3,740 |
| Unreimbursed employee business expenses for the North Indian Ave. rented apartment (3 months' use by Mr. Radnitz) | 2,495 |
| Unreimbursed employee business expenses for the Ravenspur rented apartment (3 months' use by Mr. Radnitz) | 4,138 |
| Total | $10,373 |

The above expenses were essentially all for rent, gas, electricity, and cable television.[4]

---

[4] For 1998, the claimed Deepak apartment expenses of $3,740, as prorated, consisted of rent, $2,040; gas, $512; electricity, $900; and television cable, $288. The claimed North Indiana Avenue apartment expenses of $2,495 consisted of rent, $1,590; gas, $450; electricity, $254; and television cable, $201. The claimed Ravenspur apartment expenses of $4,138 consisted of rent, $3,825; electricity, $189; and television cable, $124.

In addition to the rent and utilities expenses, petitioners deducted expenses for furnishing the North Indian Avenue and Ravenspur apartments during 1998 totaling $1,371.  In the notice of deficiency, respondent disallowed the $1,371 on the ground that, although substantiated, the claimed amount did not constitute deductible ordinary and necessary business expenses.

The Court first addresses petitioners' entitlement to the deductions claimed for 1997 and 1998 relating to their residences (Vista Loma and Deepak) and next considers the deductions claimed for 1998 relating to the two rented apartments (North Indian Avenue and Ravenspur).[5]

Under section 162(a), a taxpayer is allowed to deduct all ordinary and necessary expenses paid or incurred in carrying on a trade or business.  However, section 280A(a) generally disallows deductions with respect to the use of a dwelling unit that is used by a taxpayer as a residence during the taxable year, with certain exceptions.  One of those exceptions applies to use of a home office.  The home office exception, sec. 280A(c), provides:

_____

[5]    Generally, the burden of proof is on a taxpayer to establish entitlement to deductions, which are a matter of legislative grace.  New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).  In certain circumstances, however, sec. 7491 shifts this burden of proof with respect to examinations of returns commencing after July 22, 1998.  There is no evidence in the record regarding the date the examination of petitioners' returns commenced, and petitioners do not contend that sec. 7491 applies.  In any event, the Court decides this case without regard to the burden of proof.

SEC. 280A(c). Exceptions for Certain Business or Rental Use; Limitation on Deductions for Such Use.--

(1) Certain business use.--Subsection (a) shall not apply to any item to the extent such item is allocable to a portion of the dwelling unit which is exclusively used on a regular basis--

(A) as the principal place of business for any trade or business of the taxpayer,

(B) as a place of business which is used by patients, clients, or customers in meeting or dealing with the taxpayer in the normal course of his trade or business, or

(C) in the case of a separate structure which is not attached to the dwelling unit, in connection with the taxpayer's trade or business.

In the case of an employee, the preceding sentence shall apply only if the exclusive use referred to in the preceding sentence is for the convenience of his employer. For purposes of subparagraph (A), the term "principal place of business" includes a place of business which is used by the taxpayer for the administrative or management activities of any trade or business of the taxpayer if there is no other fixed location of such trade or business where the taxpayer conducts substantial administrative or management activities of such trade or business.

For a deduction to be allowed under section 280A(c)(1), the taxpayer must establish that a portion of the dwelling unit is (1) exclusively used; (2) on a regular basis; (3) for the purposes enumerated in subparagraphs (A), (B), or (C) of section 280A(c)(1); and (4) if the taxpayer is an employee, the office is maintained for the convenience of the employer. Hamacher v. Commissioner, 94 T.C. 348, 353-354 (1990).

The Court finds that Mr. Radnitz's use of home offices at the Vista Loma and Deepak residences satisfies the tests of section 280A(c)(1). First, petitioners met the exclusive use test with respect to the office portions of their personal residences. Mr. Radnitz allowed no personal use of the space that was used in their home as his office. Second, the offices were used on a regular basis, and Mr. Radnitz worked full time as a writer. Third, the offices represented Mr. Radnitz's principal place of business. During 1997 and half of 1998, the home space was the only office space he used.

Since Mr. Radnitz was an employee, section 280A further requires that the home office space must be for the convenience of the employer. That test has been met. Mr. Radnitz was a speculative writer who was on his own in creating the work that he sold or later hoped to sell. He was never provided with office space by his employers. In such a situation, the home or self-funded office can only be said to be for the employer's convenience. See Soliman v. Commissioner, 94 T.C. 20 (1990), affd. 935 F.2d 52 (1991), revd. on other grounds 506 U.S. 168 (1993); cf. Gestrich v. Commissioner, 74 T.C. 525 (1980), affd. without published opinion 681 F.2d 805 (3d Cir. 1982). On this record, the Court holds that petitioners are allowed deductions for their rent and utilities expenses for the use of the home offices at their Vista Loma and Deepak residences to the extent

the amounts claimed do not exceed the gross income limitations of section 280A(c)(5).

By contrast, the limitations of section 280A(a) do not apply to the rent and utilities expenses for the office space at the North Indian Avenue apartment because that space was not used by petitioners as a residence.  Section 280A limits deductions "with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  Although the North Indian Avenue space was technically an apartment, and thus falls within the definition of "dwelling unit" under section 280A(f), petitioners did not use the space as a residence during 1998.  It was used exclusively by Mr. Radnitz in his writing activity.  Petitioners' expenses in maintaining and furnishing the North Indian Avenue apartment are deductible as ordinary and necessary business expenses.

Similarly, the limitations of section 280A(a) do not apply to the rent and utilities expenses for the office space at the Ravenspur apartment.  There is no evidence in the record that the Ravenspur apartment was used as a residence or for any personal purposes by either Mr. Radnitz or Mrs. Radnitz during 1998. Petitioners were not separated from each other, and neither Mr. Radnitz nor Mrs. Radnitz used the apartment as a place of personal abode during this period or any other period during 1998.  No other possible motives for rental of this apartment

were established at trial other than the use thereof by petitioners in their professional careers. Accordingly, the Court holds that the only and exclusive use of that apartment during 1998 was for trade or business purposes. The limitations of section 280A(c), therefore, are not applicable. Petitioners' expenses in maintaining and furnishing the Ravenspur apartment are deductible as ordinary and necessary business expenses.

The Court next addresses whether the expenses deducted by petitioners have been substantiated. The Court notes that Mr. Radnitz testified credibly regarding his usage of offices both within his residence and at the two outside locations. Moreover, petitioners cooperated with respondent throughout the examination of their returns and produced sufficient documentation of their utilities expenses to convince the Court of their veracity.

Petitioners provided the Court with a summary of their utilities expenses but provided only partial expense records to support their summary. They incorrectly assumed that, since they had provided the complete set of bills and expense records to respondent during the audit, reproducing them in Court was not necessary. In the absence of adequate substantiation, this Court may estimate the amount of deductible expenses incurred, bearing heavily against the taxpayer whose inexactitude in substantiating the amount of the expense is of his own making. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). However,

there must be sufficient evidence on which to base such an estimate.  <u>Vanicek v. Commissioner</u>, 85 T.C. 731, 743 (1985).

Considering the evidence as a whole, the Court finds that petitioners paid the following amounts with respect to utilities expenses.  For 1997, the Court finds as a utilities expense $700 for the combined usage of the Vista Loma and Deepak spaces.  For 1998, the Court finds as utilities expenses $300 for the Deepak apartment, $900 for the North Indian Avenue apartment, and $300 for the Ravenspur apartment.  As respondent made no issue of the rents paid, the Court finds that petitioners paid rent expenses in the amounts deducted on their 1997 and 1998 returns.  For 1998, the Court also finds that petitioners paid furnishings expenses of $1,371 with respect to the North Indian Avenue and Ravenspur apartments, as petitioners provided sufficient evidence to substantiate these expenditures.

Finally, the Court addresses the gross income provisions of section 280A(c)(5).  Even if the requirements of section 280A(c)(1) are met, the deductions allowed are limited by section 280A(c)(5).  That section provides:

> Sec. 280A(c)(5).  Limitation on deductions.--In the case of a use described in paragraph (1), (2), or (4), and in the case of a use described in paragraph (3) where the dwelling unit is used by the taxpayer during the taxable year as a residence, the deductions allowed under this chapter for the taxable year by reason of being attributed to such use shall not exceed the excess of--

(A) the gross income derived from such use for the taxable year, over

(B) the sum of--

(i) the deductions allocable to such use which are allowable under this chapter for the taxable year whether or not such unit (or portion thereof) was so used, and

(ii) the deductions allocable to the trade or business (or rental activity) in which such use occurs (but which are not allocable to such use) for such taxable year.

Any amount not allowable as a deduction under this chapter by reason of the preceding sentence shall be taken into account as a deduction (allocable to such use) under this chapter for the succeeding taxable year. Any amount taken into account for any taxable year under the preceding sentence shall be subject to the limitation of the 1st sentence of this paragraph whether or not the dwelling unit is used as a residence during such taxable year.

This Court has held on several occasions that the home office deduction of a writer is limited to the gross income from writing. Gestrich v. Commissioner, 74 T.C. 525 (1980); Warganz v. Commissioner, T.C. Memo. 1981-403, affd. without published opinion 696 F.2d 987 (3d Cir. 1982); Parker v. Commissioner, T.C. Memo. 1984-233.

Section 280A(c)(5) thus limits petitioners' deduction of their office expenses attributable to the Vista Loma and Deepak addresses. Their deduction is limited to the amount of petitioners' gross income derived from Mr. Radnitz's use of the home offices reduced by the deductions allowable without regard

to such business use.  Scott v. Commissioner, 84 T.C. 683, 692 (1985).  Petitioners have already been allowed home office expense deductions to the extent of Mr. Radnitz's income from residuals in both 1997 and 1998.  His pension income, as respondent points out, is in the nature of deferred compensation and therefore is not considered income attributable to the use of those spaces.  Estate of Sussman v. Commissioner, T.C. Memo. 1978-344 n.3 (pension income was not from taxpayer's trade or business, but rather was "merely deferred compensation for his earlier services and * * * properly allocable to * * * [his] active employment prior to retirement").  Moreover, since petitioners rented the Vista Loma and Deepak apartments, there do not appear to be any deductions otherwise allowable with respect to them, such as mortgage interest or real property taxes.  Green v. Commissioner, T.C. Memo. 1989-599 n.6.  As a result, under section 280A(c)(5), petitioners are not entitled to greater home office deductions for the Vista Loma and Deepak apartments than the amounts respondent has already allowed.

Petitioners raised a constitutional issue with respect to section 280A(c)(5), which the Court next addresses.  Petitioners objected to the application of the income limitation of section 280A(c)(5) to them based on equal protection and fairness principles.  They argued that they may never be able to deduct the expenses of Mr. Radnitz's home office because he may not

realize income on his speculative writings for years after they are completed. In essence, petitioners contend that section 280A departs from the traditional principle of matching income and expenses and that the application of that section is unconstitutionally unfair to authors of speculative works.

Section 280A applies to all taxpayers and treats speculative authors no differently from all other citizens who maintain offices in their residences. Cook v. Commissioner, T.C. Memo. 1997-378. Moreover, section 280A(c)(5) contains a carryover provision for disallowed deductions. The Court rejects petitioners' constitutional arguments. Respondent is sustained with respect to the application of section 280A(c)(5). As noted earlier, the limitation provisions of section 280A(c)(5) are not applicable to petitioners' expenses relating to the North Indian Avenue and Ravenspur offices.

Reviewed and adopted as the report of the Small Tax Case Division.

Decision will be entered under Rule 155.